**SIGNED THIS: December 20, 2007**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FLEMING PACKAGING CORP., | ) | No. 03-82408 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| GARY T. RAFOOL, not individually, but as trustee for the above bankruptcy estate, | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 05-8124 |
| | ) | |
| PROPACK SYSTEMS, LLC, d/b/a COLLOPACK SOLUTIONS, LLC, | ) ) | |
| Defendant. | ) | |

### O P I N I O N

This matter is before the Court on the second motion for summary judgment filed by the Defendant, Propack Systems, LLC (PROPACK) on Count I of the Complaint filed by Gary T. Rafool, Chapter 7 Trustee for the estate of Fleming Packaging Corp. (TRUSTEE), seeking to avoid the eve-of-bankruptcy sale by the Debtor, Fleming Packaging Corp.

(DEBTOR), of certain assets (the "Transferred Assets") allegedly worth $5.7 million for a price of only $387,805.01, as a constructively fraudulent transfer, pursuant to 11 U.S.C. § 548(a)(1)(B).[1] The Court denied PROPACK'S first motion for summary judgment on Count I, premised on its assertion that the Transferred Assets were not owned by the DEBTOR but by fp Packaging, Inc. (PACKAGING), a separate and distinct entity from the DEBTOR. The Court determined that the ownership issue presented a material, disputed question of fact.[2]

In that Opinion, issued March 30, 2007, the Court granted summary judgment on Count II brought to avoid the same transfer pursuant to 11 U.S.C. § 544(a)(1) and 740 ILCS 160/5(a)(2), in PROPACK'S favor, determining that, based on state fraudulent transfer law's definition of an "asset" as only the unencumbered portion of a debtor's property, the TRUSTEE could not prevail because the claim of Bank One, the secured creditor, far exceeds the purported value of the Transferred Assets. In its second motion for summary judgment, PROPACK seeks to apply the parallel argument to Count I. Based on that argument, the actual ownership of the assets as between the DEBTOR and PACKAGING does not come into play. As the Court noted in its prior Opinion, if the Transferred Assets were owned by PACKAGING, they are not property of the estate and the TRUSTEE can lay no claim to them.

---

[1] The Transferred Assets include furniture, fixtures and equipment, parts inventory, documents relating to the parts and equipment and data stored in the DEBTOR'S computer system.

[2] The Court rejected the TRUSTEE'S contention that even if the assets were owned by PACKAGING, the DEBTOR and PACKAGING should be treated as one entity under an alter ego or veil-piercing theory. Addressing the issue of the ownership of the assets as between the two, the Court concluded:

> The majority of the evidence in the record tends to prove, circumstantially, that PACKAGING owned the Transferred Assets at the time of the sale to PROPACK. The evidence is not to be weighed at the summary judgment stage, however. The record contains enough evidence to the contrary that a genuine issue of fact exists as to ownership of the Transferred Assets.

**STANDARDS FOR SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail, the moving party must establish that there is no genuine issue of material fact as to any essential element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a moving party has met its initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmovant to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial. Inferences to be drawn from underlying facts must be viewed in the light most favorable to parties opposing the motion. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003).

**FRAUDULENT TRANSFER STATUTE**

Section 548(a)(1)(B) permits a bankruptcy trustee to avoid a transfer of the debtor's interest in property made within one year before the filing of a bankruptcy petition if the transfer was the result of constructive fraud. As applicable here, Section 548(a)(1)(B) provides:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligations; and

  (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

  (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

  (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. Section 548(a)(1)(B).[3]  In order to avoid a transfer under this provision as constructively fraudulent, the trustee must establish each of the following elements: (1) that an interest of the debtor in property was transferred; (2) that the transfer of that interest occurred within one year before the date of the filing of the bankruptcy petition; (3) that the debtor received less than "reasonably equivalent value" in exchange for the transfer at issue; and (4) that the debtor was insolvent on the date of the transfer or became insolvent because of the transfer.  *In re GWI PCS 1 Inc.,* 230 F.3d 788 (5th Cir. 2000).

**ISSUE**

The question whether a trustee may avoid a transfer of fully encumbered property under Section 548(a)(1)(B) must be viewed in the context of the transaction at issue.  When the DEBTOR filed its Chapter 11 petition on May 13, 2003, its purpose was to liquidate, not to reorganize.  A prearranged sale of substantially all of the DEBTOR'S assets, pursuant to Section 363(b), occurred in July, 2003, followed thereafter by conversion to Chapter 7.  It is undisputed that Bank One was grossly undersecured and was left with a deficiency balance of $8 million after liquidation of all of its collateral.

---

[3]Section 548 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which became effective on October 17, 2005.  The amendment extending the look-back period to two years applies only to cases filed on or after April 21, 2006, and is not applicable to this proceeding.

4

The sale of the Transferred Assets closed on April 25, 2003, just eighteen days before bankruptcy. There is no dispute that Bank One held a perfected security interest in the Transferred Assets and that Bank One received the entire sale proceeds of $387,805.01. There is also no dispute that Bank One affirmatively approved of the sale to PROPACK, authorized the sale price, and released its security interest in the Transferred Assets at or in conjunction with the closing of the sale.[4] Since the sale proceeds were paid to Bank One, the consideration received by the DEBTOR for the transfer was a credit in the amount of the sale price against the balance it owed Bank One.

One unusual aspect of this matter is that the party most directly harmed by a sale for less than reasonably equivalent value is not in a position to complain. If, in fact, the assets were sold for less than fair value, Bank One got shorted. Yet Bank One, having approved the sale and released its lien, could not thereafter have claimed constructive fraud. Nevertheless, if the Transferred Assets were truly worth more and had been sold for more, Bank One would have received the additional proceeds, not the DEBTOR and not the DEBTOR'S creditors. However, the DEBTOR would have received a larger credit against its debt to Bank One and Bank One's unsecured deficiency balance would have been reduced but not eliminated. Herein lies the issue: Is it constructive fraud, under Section 548(a)(1)(B), for a debtor to sell the collateral of an undersecured creditor, with the creditor's consent, for less than fair market value, where the extra value, had it been realized, would have been paid to the undersecured creditor serving only to reduce its deficiency balance?

---

[4] The record contains uncontradicted evidence that Bank One had evaluated the Transferred Assets and believed that PROPACK was paying a fair price.

5

**ARGUMENTS OF THE PARTIES**

In its second motion for summary judgment, PROPACK contends that only asset transfers that result in actual harm to unsecured creditors may be avoided by a trustee under Section 548 of the Bankruptcy Code. Recognizing that Section 548 does not contain an explicit "diminution of the estate" requirement, PROPACK maintains that the sale of the DEBTOR'S assets for $387,805.01, did not have the effect of improperly placing any assets beyond the reach of the DEBTOR'S creditors, even if those assets were in fact worth $5.7 million, because Bank One's claim far exceeded that amount. PROPACK measures the "diminution" as of the date of the sale of the Transferred Assets.

In response, the TRUSTEE argues that a transfer of fully encumbered property is still a transfer of "an interest of the debtor in property," which is subject to avoidance under Section 548(a). The TRUSTEE equates Section 541's broad definition of "property of the estate," which unquestionably includes property subject to a lien, with the requirement of Section 548 that the transfer sought to be avoided was "an interest of the debtor in property." Contending that a "diminution of the estate" requisite is subsumed within the question of whether reasonably equivalent value was received in exchange for the transfer, the TRUSTEE points to the language of Section 548 which permits a trustee to avoid "any" transfer and asserts that it would be inappropriate to engraft an additional requirement of "diminution of the estate," given the language of the statute which permits a trustee to avoid "any" transfer. The TRUSTEE contrasts the different purposes of Section 547, which carries an implicit requirement of "diminution of the estate," and whose function is to ensure the equal distribution among creditors of the same class, and of Section 548, which

is to protect creditors from last-minute diminutions in the pool of assets in which they have interests. *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988); *In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006).

In reply, PROPACK, shifting its focus to the present time and to Section 550(a), argues that any recovery that the TRUSTEE may procure will not benefit the bankruptcy estate. PROPACK asserts that if the TRUSTEE is successful in pursuing his claim, Bank One will be entitled to receive the proceeds because it retains its security interest in those assets. Relying on Section 552(a), which cuts off a prepetition security interest in property acquired by a debtor after the commencement of the case, PROPACK argues that the right to avoid the transfer arose when the case was filed – not afterwards, and that Bank One's security interest in the Transferred Assets continues.

Not conceding that the proceeds of his suit will inure to Bank One by reason of its status as a secured creditor, the TRUSTEE contends that Section 550(a)'s requirement of a benefit to the estate is not restricted to recoveries which only benefit unsecured creditors, but includes all creditors, including those who hold secured claims. The TRUSTEE discredits PROPACK'S reliance on *In re Pearson Industries, Inc.*, 178 B.R. 753 (Bankr.C.D.Ill. 1995), asserting that the court's rationale in *Pearson* has been criticized by other courts.

**ANALYSIS**

Upon the filing of a Chapter 7 bankruptcy petition, the trustee has the exclusive right to bring an action to recover property fraudulently transferred by the debtor. *In re Clark*, 374 B.R. 874 (Bankr.M.D.Ala. 2007). Under Section 548, a trustee may assert a federal

fraudulent conveyance action. Under Section 544, the trustee may also rely on state fraudulent conveyance statutes, which generally provide for a longer reach-back period.[5] The similarity between the elements of a fraudulent conveyance claim under state law to the components of a federal claim under Section 548(a)(2), have lead to the question whether the TRUSTEE'S federal claim was as equally ill-fated as the state law claim.

As PROPACK now acknowledges, unlike state fraudulent conveyance law, nothing in Section 548(a), which authorizes a trustee to "avoid any transfer of an interest of the debtor in property," precludes avoidance of a transfer of encumbered property. Although the definition of transfer in Section 548 is obviously federal, the references to "property" and "interest in property" necessitate a determination of whether a property interest was created under state law. *Frierdich v. Mottaz*, 294 F.3d 864 (7th Cir. 2002)(citing *Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992)). Under Illinois law, a debtor retains ownership of property which is encumbered by a security interest and the secured creditor acquires only the right to compel its liquidation in the event of default to satisfy the secured debt. *In re Anand*, 210 B.R. 456 (Bankr.N.D.Ill. 1997).

Neither is there an implied element of diminution of the estate like that considered to be part of Section 547, which authorizes a trustee to avoid preferential transfers. When a transferee, in defense of a constructively fraudulent transfer claim, establishes that the debtor received "reasonably equivalent value" in exchange for the transfer, there will have been no diminution or depletion of the estate. *See In re Canyon Systems Corp.*, 343 B.R. 615

---

[5]For instance, causes of action under the Illinois UFTA may be brought within four years after the transfer was made. 740 ILCS 160/10(a)

8

(Bankr.S.D.Ohio 2006). Likewise, where a trustee proves that the debtor received less than a reasonably equivalent value, the challenged transfer, even of a fully encumbered asset, will have diminished the estate. Similarly, transfers of fully exempt property are subject to avoidance under Section 548 notwithstanding the lack of actual harm to any creditor. *Tavenner v. Smoot,* 257 F.3d 401 (4th Cir. 2001).

The diminution is apparent from the effect that the transfer has on the debtor's relative solvency. A transfer of any property for less than fair value makes an insolvent debtor more insolvent, i.e., increases the debtor's negative equity. The negative effect on the debtor's bottom line occurs whether or not the property was fully encumbered. This conclusion follows from the fact that insolvency, a necessary element of a claim under Section 548, is determined on an aggregate basis by comparing the sum of all of the debtor's debts with the total value of all of the debtor's property. 11 U.S.C. § 101(32)(A). Thus, the "diminution of the estate" factor is subsumed within both the reasonably equivalent value and insolvency elements.

Recognizing the separation between the avoidance of a transfer and the recovery of the avoided transfer, PROPACK contends that the TRUSTEE cannot recover the Transferred Assets from it under Section 550(a) because the recovery would not benefit the unsecured creditors but would be reaped only by Bank One. The TRUSTEE does not concede that the monies recovered from PROPACK would be paid to Bank One. The question can be a difficult one. The decisions are conflicting, and must be considered in the context of the particular transactions at issue. *See generally* Nancy L. Sanborn, Note, *Avoidance Recoveries in Bankruptcy: For the Benefit of the Estate or the Secured Creditor?,* 90

Colum. L. Rev. 1376 (1990); *In re Veterans Choice Mortgage*, 291 B.R. 894 (Bankr.S.D.Ga. 2003). While this issue is an important one which may need to be addressed at a later stage of the proceedings in the main case by Bank One and the TRUSTEE, should he ultimately prevail, it is not dispositive of the TRUSTEE'S right to proceed in this adversary against PROPACK.

Prior to setting forth the types of transferees from whom recovery may be had, the prefatory language of Section 550(a) provides, in pertinent part, as follows:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section [548], the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property. . . .

"For the benefit of the estate" is not a defined term in the Bankruptcy Code nor does it have a "plain meaning." It has been interpreted as both descriptive and restrictive in nature. Section 550(a) codifies the holding of *Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931), that a recovery had by the trustee is for the benefit of all unsecured creditors in accordance with the distributive provisions of the Bankruptcy Code, not only for those creditors whose claims against the debtor were in existence at the time the conveyance was made and whose claims conferred standing upon the trustee in the exercise of his strong-arm powers under state law and is not restricted by the amount of those creditors' claims. *Congress Credit Corp. v. AJC Intern.*, 186 B.R. 555 (D. Puerto Rico 1995); *In re Pearson Industries, Inc.*, 178 B.R. 753 (Bankr.C.D.Ill. 1995).

Interpreting the provision as a limitation on the trustee's right to avoid a transfer, courts have universally concluded that an avoidance action cannot be maintained unless

a recovery would benefit the bankruptcy estate. *Matter of P.A. Bergner & Co.*, 140 F.3d 1111, 1118 (7th Cir. 1998); *Wellman v. Wellman*, 933 F.2d 215, 218 (4th Cir. 1991); *In re Knippen*, 355 B.R. 710 B.R. (Bankr.N.D.Ill. 2006). The overwhelming majority of courts have broadly construed the provision to only require a showing that the recovery will result in "some benefit" to creditors. *See, e.g., In re Calpine Corp.*, 377 B.R. 808, (Bankr.S.D.N.Y. 2007). This Court does not consider Section 550(a)'s "for the benefit of the estate" phraseology as a statutory requirement that the unsecured creditors benefit directly from the recovery of an avoided transfer, i.e., that the recovered funds end up in the pockets of the unsecured creditors.[6] Noting that an indirect benefit to the estate will suffice, the Seventh Circuit Court of Appeals has pointed out that Section 550(a) "speaks of benefit to *the estate* – which in bankruptcy parlance denotes the set of all potentially interested parties – rather than to any particular class of creditors." *Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290 (7th Cir. 2003); *In re Furrs*, 294 B.R. 763 (Bankr.D.N.M. 2003)(estate is benefitted when action "increases the value or assets of the estate"). Arguably, the reduction or elimination of a claim benefits the estate. The determination of whether a recovery will benefit the bankruptcy estate must be made on a case-by-case basis. *In re Furr's Supermarkets, Inc.*, 373 B.R. 691 (10th Cir.BAP 2007). The fundamental principle that a trustee's fiduciary duties run only to the unsecured creditors is not necessarily discordant with procuring a recovery which directly benefits a secured creditor. *See In re NETtel Corp., Inc.*, 364 B.R. 433 (Bankr.D.Dist. Col. 2006). Here, if the TRUSTEE prevails and even if Bank One is entitled

---

[6] Section 550(a)'s designation that the recovery be for the benefit of the estate does not necessitate a distinction between types of creditors. Courts have held that a trustee cannot recover an avoided transfer which will only benefit the debtor – not the bankruptcy estate. *Wellman, supra.*

to the funds as a secured creditor, its unsecured claim would be decreased, freeing up other funds to be distributed to unsecured creditors.[7] *In re Fisher*, 362 B.R. 871 (S.D.Ohio 2007) (citing *In re Triple S Restaurants, Inc.*, 422 F.3d 405 (6th Cir. 2005)).

This Court holds that under the facts of this case, PROPACK has failed to establish, as a matter of law, that a recovery of the value of the Transferred Assets would not result in a benefit to the bankruptcy estate. Accordingly, the TRUSTEE is not barred from seeking to avoid, as a fraudulent transfer, the transfer of assets to PROPACK. PROPACK'S second motion for summary judgment will be denied. The issues remaining for trial are the ownership and value of the "Transferred Assets" on the date of the sale to PROPACK and whether the DEBTOR was insolvent or rendered insolvent by the sale of those assets.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[7] According to the TRUSTEE'S report for the period ending March 31, 2007, he has collected approximately $1,308,370. PROPACK has not argued that no portion of these funds will be available for distribution to general unsecured creditors.